(122 So. 652)

### REDD CHEMICAL & NITRATE CO. v. W. T. CLAY MERCANTILE CO. et al. (8 Div. 52.)

Supreme Court of Alabama.  March 28, 1929.

Rehearing Denied May 30, 1929.

BROWN, J. ■ This appeal is prosecuted by the complainant in the court below from a decree sustaining the demurrers of the defendant Farmers' & Merchants' Bank to the bill as last amended, and the case was submitted without assignment of errors on the record, as required by the rules of practice of this court. The decree is due to be affirmed. Nichols v. Hardegree, 202 Ala. 132, 79 So. 598.

It is so ordered.

Affirmed.

ANDERSON, C. J., and SAYRE, and THOMAS, JJ., concur.

### On Application for Rehearing and Motion to Set Aside Judgment.

BROWN, J. ■ A judgment of affirmance entered because of the failure of the appellant to assign errors is in the nature of a judgment by default; the assignment of errors being regarded as necessary pleading to inform the appellee of the matters complained of and to invite review by the court. Kinnon, as Adm., v. L. & N. R. R. Co., 187 Ala. 480, 65 So. 397.

■ The office of an application for rehearing is to invite a re-examination of the questions decided in respect to their soundness as applied to the merits of the case as presented on appeal, and is not an appropriate proceeding to have the judgment which has been properly and correctly rendered vacated or set aside.

■ Under the circumstances, the merits of the appeal cannot be presented until the judgment of affirmance and the order of submission is set aside, with leave to appellant to assign errors on the record and resubmit the case.

■ The appropriate and correct proceeding to this end is a motion entered upon the motion docket showing reasonable excuse by the appellant for his failure to assign errors, and notice to the adverse party, as required by the rule of practice, 4 Code of 1923, p. 884, rule 16.

However, in as much as no objection is made in the instant case as to the method of procedure, and the fact that the court has heretofore, on one occasion at least, considered such motion filed in the form of an ap-

D. A. Grayson and R. C. Brickell, both of Huntsville, for appellant.

J. G. Rankin, of Athens, for appellees.

plication for rehearing (McLeod v. Adams [Ala. Sup.] 118 So. 636[1]), we forego resting our conclusion on the ground that the appropriate procedure has not been followed, but deem it proper to make the foregoing observations as a guide in the future.

The appeal is from a decree sustaining demurrers to the bill filed by the appellant, the purpose of which, as stated by appellant, is to establish and enforce an equitable lien on the proceeds of certain warehouse receipts, notes, and mortgages, and for an accounting and general relief, and, as a basis for this relief, the bill avers, in substance, that the appellant, in the spring of 1926, was engaged in the business of manufacturing and selling fertilizers, and at the request of the defendant W. T. Clay Mercantile Company made a shipment of fertilizers, and in making such shipment, as was its custom of which said defendant was advised, complainant attached a draft to the bill of lading, covering the price of the shipment, accompanied by letter of advice and notes to be executed, which were forwarded to the defendant Farmers' & Merchants' Bank, instructing the bank that, if the Clay Mercantile Company desired to purchase said fertilizer on credit, and would execute the notes and contract, the fertilizer was to be delivered without payment of the draft; that the Clay Mercantile Company exercised the option of settling for said fertilizer by giving its notes and executing the contract, and executed its three notes aggregating $870.

Subsequent to the execution of these notes, pursuing its general custom in such matters, the complainant allowed its customer, the Clay Mercantile Company, about the 1st of May, to execute three renewal notes in equal amounts, covering the indebtedness then unpaid, payable October 1st, 15th, and November 1st, respectively, and, upon the execution and delivery of these notes, complainant surrendered to the customer the original notes. The first note due October 1, 1926, for $300.83, was paid, leaving the other notes with the interest and attorney's fees thereon unpaid.

Copies of the letters of advice, the notes, and contract are made exhibits to the bill, and it is averred that, under the terms of the contract, in which is embodied the following stipulation: "On May 1st, 1926, or sooner, if possible, you (the Clay Mercantile Company) are to deliver to us (complainant) on our order, notes or other obligations of the farmers or other purchasers to whom you may sell these goods for the gross amount of the sales of the same, to be held by us as collateral security for the payment of your obligation above mentioned. They will be returned to you in ample time for collection, in accordance with the provisions hereinbefore stated. Consumers' notes given as collateral

security are to mature not later than September 15th, 1926"—it was the duty of defendant Clay Mercantile Company, when it sold fertilizers, to take mortgages, either payable to the complainant or the mercantile company, and turn said mortgages over to the complainant after they were indorsed by the mercantile company guaranteeing the payment thereof, and the further duty of the mercantile company to account to the complainant "because of the trust relation between them."

"During the progress of the business of said W. T. Clay Mercantile Company, during the year 1926, the said company turned over to defendant the Farmers' & Merchants' Bank at Athens, Alabama, warehouse receipts covering some three hundred bales of cotton, which warehouse receipts or a large part thereof, represented cotton grown by persons to whom said W. T. Clay Mercantile Company had sold fertilizers, procured by it from complainant under the contracts made exhibits to this bill, and for which it had taken crop lien notes or mortgages to secure payment for said fertilizer, and which said cotton or warehouse receipts were by virtue of said contracts between complainant and said W. T. Clay Mercantile Company, impressed with a legal or equitable lien in favor of complainant, growing out of contractual relations between complainant and said W. T. Clay Mercantile Company as aforesaid.

"Complainant further shows unto the court that in addition to the cotton warehouse receipts transferred to defendant Farmers' & Merchants' Bank, at Athens, Alabama, by said W. T. Clay Mercantile Company, said company turned over to said bank, chattel mortgages which were liens on the crops of customers of said W. T. Clay Mercantile Company, raised during the year 1926, to whom said W. T. Clay Mercantile Company had sold fertilizers procured by it from complainant under the contracts made exhibits to this bill, and for which it had taken such chattel mortgages in pursuance of said contracts exhibits to this bill. * * *

"Orator shows that it has demanded an accounting and a settlement of the W. T. Clay Mercantile Company, and at the time of said demand defendant, W. T. Clay, acting for himself and said W. T. Clay Mercantile Company having in his possession said warehouse receipts, notes and mortgages, or some of them, stated that he would confer with defendant, Farmers' & Merchants' Bank, before he would turn same over to orator, and after conferring with said bank or its officers and agents declined to turn over or deliver same to orator, but did deliver same to said defendant bank. * * *

"Orator shows that it has made demand of the Farmers' & Merchants' Bank at Athens, Alabama, for payment of its demand or for the delivery of the cotton warehouse receipts,

and the collateral hereinbefore referred to, but said Bank claims that it was an innocent purchaser of the said cotton warehouse receipts and collateral. * * *

"Orator charges that the Farmers' & Merchants' Bank of Athens, Alabama, had notice of the agreement between your orator and defendant, the said W. T. Clay Mercantile Company, and that it is estopped from laying any claim to a part, if not all of the three hundred bales of cotton, represented by the three hundred cotton warehouse receipts and to any other collateral turned over to it by the said W. T. Clay Mercantile Company, which had been given to secure the payments of amounts for fertilizers which had been advanced by the said W. T. Clay Mercantile Company, which they had acquired from your orator.

"Orator further charges that Defendant, the Farmers' & Merchants' Bank, is because of its having notice of the agreement between orator and defendant, the W. T. Clay Mercantile Company, estopped from laying any claim to the collateral transferred to it by the said W. T. Clay Mercantile Company.

"Orator shows that its liens against the assets hereinbefore mentioned as having been transferred to the said Bank, have been destroyed by said Bank or that said Bank has converted said assets, to which orator had the legal or equitable title, to its own use."

The relief prayed is that the Clay Mercantile Company be required to account for all notes, mortgages, and warehouse receipts taken or received by it for fertilizers sold, and that the defendant bank be required to account for such notes and mortgages as it may have received from the mercantile company, and that a decree be rendered against the defendant mercantile company for the amount due on the indebtedness, and that it be required to pay the same, and that a decree be rendered against the defendant bank for the money received by it as the proceeds of such notes, mortgages, and other evidences of debt, cotton, or cotton warehouse receipts.

■ There is not only an absence of averment in the bill that the defendant bank, at the time the bill was filed, had in its possession the choses in action or property or the proceeds thereof in such form as that they may be kept in view, traced, and ultimately located in some particular fund or property, but the bill affirmatively avers that the alleged lien of complainant has been destroyed, or the said choses in action or property has been converted to the use of defendant.

Therefore, if it be conceded that the stipulation in the contract binding the mercantile company to pledge the notes and mortgages taken for fertilizers sold is a sufficient predicate for fixing on them an equitable lien, and hold the mercantile company as trustee, the bill shows that the property sought to be charged has passed beyond the reach of the court, and the most that appears is that the proceeds thereof may be found somewhere in the general estate of the defendant bank; and the only decree that could be rendered is a money decree, with execution leviable on the defendant's property. To state the proposition in a different way, taking the averments of the bill as true, the property sought to be charged has been disposed of, and its proceeds cannot be kept in view, traced, and ultimately located in some particular fund or property. This much is necessary to sustain the equity of the bill as one to trace and recover trust funds. Lummus Cotton Gin Co. v. Walker, Supt., 195 Ala. 552, 70 So. 754; Hanover Nat. Bank v. Thomas, Supt., 217 Ala. 494, 117 So. 42; Fourth Street Bank v. Yardley, 165 U. S. 635, 17 S. Ct. 439, 41 L. Ed. 855.

In Powell v. Jones, 72 Ala. 392, the funds charged with the lien were in the hands of one of the solicitors who was claiming a lien thereon for his professional services, and he was made a defendant in the suit.

■ The rendition of a judgment wholly pecuniary and personal, collectable merely by execution, is opposed to the general theory and principle governing courts of equity. "The remedies of equity are, as a class, specific. Although it is commonly said of them, that they are not in rem, because they do not operate by the inherent force of the decree in an equitable suit to change or transfer the title or estate in controversy, yet these remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing—a tract of land, personal property, or a fund—rather than a right to recover a sum of money generally out of the defendant's assets." 3 Pom. Eq. Juris. (3d Ed.) § 1234.

■ The bill is wanting in equity as a bill for an accounting against the bank. There is no controversy as to the amount of the complainant's demand against the mercantile company, and the measure of the damage recoverable against the bank, if it has converted assets impressed with an equitable lien as a security for the debt, is limited by the debt which the lien secures. Karter v. Fields, 130 Ala. 430, 30 So. 504.

■ To recover in an action at law against the bank, the complainant would meet and carry the burden of proof resting on it by showing that the value of the property covered by such lien and converted by the bank was equal to or exceeded the amount of the debt due from the mercantile company.

■ On the facts averred in the bill, we are of opinion that an action on the case for the destruction of the equitable lien afforded a complete and adequate remedy at law. Hudson, Kennedy & Co. v. Vaughan's Executor, 57 Ala. 609.

Therefore, pretermitting consideration as to whether appellant has made sufficient showing to relieve it of negligence in failing

482

to assign errors on the record, the ends of justice do not require that the judgment of affirmance should be vacated.

Application and motion overruled.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

