154 So.2d 18

**Fred LIMBAUGH and James E. Heaton**

v.

**STATE DEPARTMENT OF PUBLIC SAFETY.**

**6 Div. 911, 912.**

Supreme Court of Alabama.

May 30, 1963.

Nina Miglionico, Birmingham, for appellants.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for appellee.

MERRILL, Justice.

Fred Limbaugh owned an automobile registered in Alabama and he loaned it to James E. Heaton. Heaton was involved in an automobile accident in the State of Arkansas, which has a Motor Vehicle Safety Responsibility Act similar to the one we have in Alabama.

The Commissioner of Revenues in Arkansas, the administrator of the act in that State, ordered the driver's license of Heaton suspended and the use of Limbaugh's license plates suspended. That order was sent to the Director of Public Safety in Alabama and he ordered Limbaugh to surrender his license plates and Heaton to surrender his driver's license. They appealed this order to the Circuit Court of Jefferson County, where the order was upheld, and this appeal is from the judgment of the Circuit Court of Jefferson County. The two cases are consolidated in one record.

Captain George Wallace of the Drivers License Division, testified that the vehicle

owned by Limbaugh and driven by Heaton was involved in an accident near Lake Village, Arkansas, on December 11, 1961; that the driver's license of the operator and the plates of the owner were suspended according to the Arkansas Motor Vehicle Safety Responsibility Law, and upon receipt of certified copies of such orders of suspension, the Director of Public Safety of Alabama did suspend Heaton's driver's license and Limbaugh's tag, as provided by Tit. 36, § 74(49) (c), (all citations. refer to Michie's Recompiled Code of 1958).

The State called Heaton as a witness, and after admitting that he held Alabama driver license No. 4280, he refused to answer any more questions on the ground that the same might tend to incriminate him. Limbaugh testified that he did not know whether his automobile was subject to the orders of the State of Arkansas; that his automobile was in the same condition when returned by Heaton as it was when the loan was made, and that no repairs had been made on the automobile. The trial court confirmed the order of the Director of Public Safety.

Title 36, § 74(49) (c), reads:

' "Upon receipt of such certification that the operating privilege of a resident of this state has been suspended or revoked in any such other state pursuant to a law providing for its suspension or revocation for failure to deposit security for the payment of judgments arising out of a motor vehicle accident, under circumstances which would require the director to suspend a nonresident's operating privilege had the accident occurred in this state, the director shall suspend the license of such resident if he was the operator, and all of his registrations if he was the owner of a motor vehicle involved in such accident. Such suspension shall continue until such resident furnishes evidence of his compliance with the law of such other state relating to the de-- posit of such security."

Appellants argue that the Alabama Director of Public Safety cannot revoke an operator's driver's license or the owner's license plates for failing to comply with the Motor Vehicle Safety Responsibility Act of Arkansas where no reciprocal agreement exists between Alabama and Arkansas. They contend that Tit. 36, § 70(2), which authorizes the Alabama Director to make reciprocal agreements with other states relative to drivers' licenses should be read and applied in conjunction with Tit. 36, § 74(49) (c), quoted supra. We cannot agree. '

The act containing § 70 (2) became effective September 12, 1951, while the Motor Vehicle-Responsibility Act did not become effective until January 1, 1952. The two acts deal with separate subjects and § 70(2) has no relation to § 74(49) (c). Nowhere in the Motor Vehicle Safety-Responsibility Act is there any requirement for reciprocal agreements. The authority for the action taken in the instant case is contained in § 74(49).

The other points argued by appellants are the same as those argued in Render v. Mann, 271 Ala. 558, 126 So.2d 94. There Render, an Alabama resident, had his license suspended in Tennessee, which also has a Financial Responsibility Law. On appeal, Render argued that his license should not be suspended because the Tennessee suspension was for two years while the Alabama law provided for one year (we interpolate in some cases). Here, appellants argue that the Arkansas law may be different than ours. There, Render argued that there was no evidence that a claim had been filed against him in Tennessee or in Alabama. Appellants argue the same thing here. Our decision in Render v. Mann, supra, found "no merit in the grounds for reversal as asserted by appellant."

Appellants argue that Render v. Mann, supra, is not applicable here because it "is not shown what independent action the Director of Public Safety took in determining the facts of the Tennessee suspension." The original record in that case does not show any independent action or

investigation by the Alabama Director of Public Safety, so that feature of the Render case is not a distinguishing one.

It follows that the judgments of the trial court in each of the cases should be and are affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.